and we'll turn to the third case on the calendar which is McFadden v. Annucci. Thank you so much, Your Honors. Good afternoon, Your Honors. My name is Renee Jones and I, along with my co-counsel John Romberg, represent the plaintiff appellant Reginald McFadden for Seton Hall Law School's Center for Social Justice. In a moment, my co-counsel will explain why the central question as to McFadden's ISP status turns on the imminent danger by the time of his second amended complaint, not the danger at the time McFadden of McFadden's third amended complaint, and not the merits of his hepatitis C claim. But first, I will explain that imminent danger did exist by the time of McFadden's second amended complaint and that his hepatitis C claim is, in fact, viable and should not have been dismissed to Esponte. Given McFadden's three strikes, in order to proceed ISP, he must demonstrate imminent danger. McFadden demonstrated this imminent danger in his original complaint, but quite plainly by the time of the second amended complaint, based on the defendant's prolonged refusal to treat his hepatitis C. This court held in Chavis that imminent danger of serious physical injury is a modest threshold procedural determination, and it's one that McFadden readily satisfies. McFadden alleged that docs diagnosed him with hepatitis C in 2002 and that doc doctors approved him in 2004 for hepatitis C treatment if he so desired. By 2013, McFadden's viral load began to increase significantly, reaching 2.4 million in 2013 and 3.6 million in September of 2014. In February of 2015, after McFadden requested treatment, he specifically alleged that docs refused him the treatment after repeated results of high liver enzymes and high count of viral load, which continued to grow. Later in 2015, McFadden's viral load increased to 6.9 million, and by October of 2015, McFadden alleged over 10 million viral load counts. At that point, he alleged liver dysfunction, that his condition was life-threatening, and that he was in constant pain and suffering, as stated in his sworn allegations in support of ISP, the ECF document number three. Defendants were still refusing to treat him at the time of the second amended complaint in October of 2016, 13 years after treatment was approved and at least a year and a half after he plainly alleged serious danger. These allegations are more than enough to overcome the modest burden required to demonstrate imminent danger. Moreover, for the same reasons McFadden's untreated hepatitis C demonstrates imminent danger, it also demonstrates the substantive viability of his hepatitis C claim, which should not have been dismissed to his fonte. In a moment, my co-counsel will explain that imminent danger in McFadden's ISP status does not depend on the substantive merits of McFadden's hepatitis C claim. However, even if it did, McFadden's eighth amendment claim based on defendants' prolonged refusal to treat his hepatitis C is viable, and sua sponte dismissal was entirely improper. One minute. This court has called sua sponte dismissal of pro se complaint a disfavored procedure that is only proper when the complaint lacks even a colorable basis. For the same reason that McFadden faced imminent danger by the time of his second amended complaint, he also had a far more than colorable basis for an objectively serious medical need supporting the merits of his claim. He alleged rapidly increasing viral load, approval for treatment 12 years earlier, and that the defendants refused to treat him. Now, the district court dismissed his claim, finding that it failed to satisfy the subjective prong of colorable, deliberate, and different. The district court concluded that McFadden alleged only a difference of opinion regarding the proper course of treatment, but in fact, McFadden alleged that defendants provided no treatment at all, despite their approval of treatment 12 years earlier, and despite the objectively serious medical need. Moreover, even though not required for deliberate indifference, McFadden specifically alleged non-medical reasons for this refusal for treatment, including a desire to avoid the huge expense, retaliation against him for lodging complaints, and transfers between institutions to avoid hepatitis C treatment. McFadden has readily met his modest burden to show that by the time of his second amended complaint, his untreated hepatitis C put him in imminent danger, justifying his IFC status, and alleging a far more than colorable basis of his Eighth Amendment claim that it should not have been dismissed to a sponsor prior to service. Thank you, Your Honor. If I can take any questions you may have. Thank you, Ms. Jones. Judge Parker? I just have one minor question I want to clarify. Remind me, it's been a while since I visited our clerk's office. The filing fee is what? $450, Your Honor. Okay. Assuming hypothetically by 2017, he had been given required treatment for hepatitis, and lack of treatment was the basis of his Eighth Amendment claim. I take it your question is whether the earlier complaints plausibly alleged imminent danger. Is that your position? Yes, Your Honor. That is a simple notice pleading standard that McFadden readily met, and that this court is empowered to look at the second amended complaint. Okay. So, the court was not authorized to consider or take into account the fact that he may have gotten the necessary treatment in connection with evaluating his IFP application. No, Your Honor. Even though the treatment may have happened subsequently, the court can still find imminent danger based on the time of the second amended complaint. My co-counsel will go into that more fully, but this court held in Chavis that a subsequent amended complaint doesn't somehow eradicate or remove imminent danger that could be found earlier from a prior complaint. With a complaint that alleged Eighth Amendment violation that was filed after he received treatment, does that meet 12B6 requirements? If I understand your question, Your Honor, if the Eighth Amendment claim came after and that was the only claim related to imminent danger, then yes. Here, the Eighth Amendment claim was filed with the original complaint, so carried all the way through. Just to get ahead of ourselves just a bit, would that have been a summary judgment issue or a 12B6 issue? Well, for imminent danger purposes, perhaps he would have had leave to amend to show imminent danger, but then it would have been a 12B6 issue on the merits of the claim. So, it would meet 12B6 as to damages, but not as to imminent danger. Okay. Thank you. Thank you, Your Honor. Judge Rodger, any questions for Ms. Jones? Yes, I do. As I understand at least part of your adversary's argument on imminent danger and the bona fides of your deliberate indifference claim, the suggestion is that even though he didn't get treated, he was constantly monitored for the state of his signs and symptoms, hepatitis. And I'm wondering why that doesn't preclude a deliberate indifference claim. I mean, it might still leave a negligence or a malpractice action, but how is it maintained as deliberate indifference in light of the monitoring? Yes, Your Honor. For two reasons. So, in February 2015, defendants denied treatment and said they were constantly monitoring. First, the record indicates that docs had conclusions otherwise, that they approved him for treatment and that they denied that treatment. So, there is a conflict in their own record. But additionally, even assuming that McFadden didn't require treatment in February 2015 and that they were monitoring him, that was a full year and a half before his second amended complaint. And there's nothing in the record that suggests how they were monitoring him or that suggests that they were continuing to viably determine that he wasn't a candidate for treatment. Moreover, they decided to treat him three months after his second amended complaint. So, perhaps down the line, they may be able to argue at trial or at summary judgment that it was negligent or that they, you know, had a reason for not treating him for over a decade. But at this stage in the pleadings, it's certainly not enough to warrant a substantive dismissal. I have one other question. The pleadings sometimes seem to be contradicted by the attached medical records. For instance, in the TRO motion, your client professed to have experienced signs and symptoms of liver malfunction with over 10 million viral load counts. And as I understand it, there was no point at which he approached 10 million viral load counts, or did I miss something? No, your honor. So, the latest medical record that we have in the record is from February 2015. McFadden alleges that he was over 10 million at some point in 2015. But none of the medical records seem to indicate that. Indeed, they are far lower than that, or again, did I miss something? The medical records go up to, in 2015, they had him increased to a 7 million viral load count. That, in document ECF number 3, that was an increase from 2 million in 2013 up to 4 million, almost 4 million in 2014, increasingly. I'm not disagreeing with what they do show. I'm just asking if I'm correct that they never show 10 million, over 10 million, which was what the assertion was in support of the TRO motion. No, the last medical record says 7 million in early 2015. He alleges 2015, 10 million, but there's not a record to support that. Okay. I have no further questions. Thank you. I have some questions for Ms. Jones. And I know, Ms. Jones, you've reserved one minute for rebuttal, and we'll hear from you later. But we'll turn to Mr. Romberg in a moment. But I have a question or two for you. Of a clerical nature, I'm sorry to say, since I'm presiding, I want to make sure that I have this right. You're appearing under Rule 46.1E of law students, is that right? Yes, Your Honor. Okay. I hesitate to go over some of the same material as Judge Rodgey and Judge Parker, but help me on this. Is it true that McFadden is now receiving treatment for his hepatitis C? Yes, Your Honor. The opposition brought up in their brief that he started receiving treatment in January 2017. But this in no way negates imminent danger that can be found in his prior complaints, nor does it undermine the viability of his Eighth Amendment claim. And why not? Why do you say that? Yes, Your Honor. Because for the imminent danger portion, imminent danger can be found based on this court's holding in both Chavez and Harris at the time of the Second Amendment complaint, and does not dissipate just because he was treated by the time of the Third Amendment complaint. And the viability of the Eighth Amendment claim can include a viable claim of damages, even if he has been sufficiently treated, which at this point is still unknown, whether the treatment was adequate or sufficient to address his medical needs. Now, it's the case, is it not, that this is an appeal from the order that dismissed to respond to four of your client's claims, right? Yes, Your Honor. And then there was a 2019 order that denied plaintiffs informal pauper status in the district court. Is that right? Yes, Your Honor. Is there anything else? In other words, we've never gotten, we've never gotten in this case to the point of motion practice under Rule 12b-6. Is that right? Correct, Your Honor. All of these decisions were made at much earlier of a stage than that. Right, right. I think that's all I have to ask. Let's turn to Mr. Romberg. Good afternoon and may it please the court. John Romberg, also for Mr. McFadden on behalf of Seton Hall Law School Center for Social Justice. And as my co-counsel has just explained, imminent existed at the time of McFadden's second amended complaint. And she's also explained why his eighth amendment hep C claim was viable and shouldn't have been dismissed to respond to because it was at least colorable and at the very least as to damages. I will now address defendants two primary arguments against McFadden's IFP status. First, that his imminent danger had dissipated by the time of his third amended complaint. And second, that imminent danger is in any event irrelevant because purportedly his hepatitis C claim is not viable and therefore the imminent danger is not dispositive. And what matters is the viability of that claim on the merits. I'm also intending to briefly address imminent danger arising from his retaliation claim and answer any questions about that or about the merits of his three other claims dismissed sua sponte. Nothing had reached 12b-6. But it's the defendant's primary arguments about IFP status. First, they argue that the hepatitis C treatment prior to the third amended complaint, therefore retroactively eliminates the IFP status that arose from the imminent danger at the time of the second amended complaint. And that's simply not what this court has recognized. That in Harris, the inmate filed an original complaint and then filed an amended complaint. And what this court considered was imminent danger at the time of the original complaint. In other words, if imminent danger exists at the time of a complaint, then the mere fact that a litigant later files an amendment doesn't wipe away IFP status and restart the clock so that imminent danger needs to be proved all over again. Harris looks after the amended complaint, looks to the existence of imminent danger at the time of the prior complaint. The defendant's second argument and what they raised to the district court below was an argument that the purported lack of substantive merit of the hepatitis C claim precludes IFP status, notwithstanding imminent danger. And first, as Ms. Jones explained, the hepatitis C claim is viable. It should not have been dismissed as lacking even a colorable basis. But even more fundamentally as a legal matter, that argument is simply not correct. This court has in Harris and a number of other cases that the IFP determination, the imminent danger determination under Section 1915G is analytically independent of and prior to any determination of the merits. Chavis explicitly holds that Section 1915G, quote, is not a vehicle for determining the merits of a claim. It concerns only a threshold procedural question while separate PLRA provisions are directed at screening out meritless suits early on. One minute. Instead, the IFP status is only precluded if the allegations of imminent danger are ridiculous or delusional or entirely conclusory, as Chavis explains, meaning a threadbare recital of the elements of a cause of action. In other words, if there's no factually plausible basis to believe there's imminent danger and there absolutely is here, even if one is skeptical of the merits of the claim, which one should not be, there's absolutely allegations of imminent danger arising from the rapidly increasing viral load at the time of the second amended complaint. Defendants attempt to argue that the nexus requirement of Pettis somehow shoehorns merits back into the IFP assessment, but that's simply not true. Pettis explains that IFP is parallel to the requirement of standing. It's a ticket to entry to the courtroom to determine the substantive viability of a claim. Pettis quotes and cites to it to Worth v. Selden in the Supreme Court, which expressly held, I quote, standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal. It's, as Pettis says, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute. So too with IFP status. Finally, retaliation, and we've extensively covered this in the briefing, is also a viable basis for imminent danger. And defendant's argument is that McFadden's ridiculous, but the district court itself found those claims to be viable. But I'm happy to answer questions about any of that or about the three claims dismissed sui sponte. Fine. Judge Parker, any questions for Mr. Romberg? Yeah, I just want to have you help clear up something in my mind. Let's say a complaint is initially filed in 2012, amended in 2015, amended in 2017. In 2012, the imminent danger is the non-treatment of hepatitis C. In the interim, the condition between the filing of the first complaint and the filing of the third, the medical condition is addressed, and it's not disputed that it's state-of-the-art treatment. It's your position that the medical condition at 2012 follows through all subsequent amendments? Yes, absolutely, as to imminent danger and IFP status, not as to injunctive relief on the merits of the claim. So I think Ms. Jones was explaining this, but imminent danger, as Harris and Chavis demonstrate, can arise at the time of any complaint. And Congress, in enacting Section 1950 and G, and this court in interpreting it, have been very strict and said what matters is imminent danger at the time of the complaint. And if imminent danger exists but then dissipates before the complaint is filed, then the litigant is not entitled to IFP status. The flip side of that is if imminent danger exists at the time of the complaint and then later dissipates, there's no re-examination, there's no revocation of IFP status. It's a ticket to enter into the and a complete cure has occurred, then injunctive relief is no longer warranted, although the claim is still viable as a basis of damages. But as to imminent danger and IFP status, what matters is imminent danger at the time of the complaint, not before the complaint and not after the complaint. Whereas for the merits, what matters is at the time of resolution and injunctive relief is not available, of course, if there's no basis for it, but damages will be available. And so it's your position that this inquiry of imminent danger is antecedent to any 12B6 or Rule 56 considerations? Yes, absolutely. That's the core idea. And, you know, this court in Chavis and a number of other cases has expressly so stated. Thank you. Judge Raji? No, I have no questions. I have a couple of questions for Mr. Lombard. We appreciate very much the work of the Seton Hall Clinic in this case and in other cases. That's by way of preface. When did you become involved in Mr. McFadden's case? Do you have a recollection of that? We were appointed by this court, I believe, approximately a year ago. So only in the Second Circuit after he had filed some papers and after this court had directed the counsel to be appointed. So have you been in touch with him recently? For example, is he aware of this stage of his case? We have written to him. We spoke with him previously. Despite the efforts of New York Attorney General's Office in general, the New York State prisons are resistant to communication. So we have spoken with him, not recently, but we have been writing him and communication can be difficult, certainly through no fault of opposing counsel. Let me ask you, in this connection, assuming for the argument, I'm just speaking entirely hypothetically, if we were to rule in your favor to one degree or another, and we remanded this matter to the district court for further proceedings, which is what you are asking us to do one form or another, would your clinic and your colleagues be able to continue to represent him in the district court? My clinic in particular does generally litigates in this court or occasionally amicus briefs in other federal courts of appeals or state supreme courts. We have often our clients after remand seek pro bono representation, and I actually, a former clinic student who graduated two years ago is with a big firm now and is in contact with us about potentially taking on some of our clients as pro bono clients on remand, and that would be a possibility, but of course not a guarantee. So we help our clients as best as we can to find counsel or guide them in asking the district court for appointment of pro bono counsel, but my clinic unfortunately doesn't do the trial level work, but we work with whatever attorneys are appointed and help them out to make their load easier and to make them more willing to take on the case. Sure, and I appreciate this very much because you can see what my concern is. This is a long-standing and complicated matter, and if it were to be remanded to the district court and Mr. McFadden did not have adequate representation, it would be very difficult to navigate through the various stages of this litigation, which as you point out is at the very threshold of the proceeding. So if I understand what you're saying is that you and your colleagues would be in a position to be helpful in securing pro bono representation in the district court if in fact the court of appeals remanded this matter for any reason. Yes, we obviously can't make any guarantees, but we in general and certainly in this case would do what we can to assist both in finding counsel and frequently when counsel is appointed to assist that counsel and send them any papers and speak with them to help get them up to speed so it's a much lighter load for them to carry. Understood. Now Ms. Jones and you have each reserved one minute by way of rebuttal, but we'll turn first to Ms. Rosenbluth for the state of New York. Thank you, Your Honor. Good afternoon and may it please the court, Sarah Rosenbluth for Appellees. Regardless of which complaint counts here for the purpose of the imminent danger analysis, none of the four different complaints filed in this act adequately alleged imminent danger. The original complaint alleged that quote plaintiff's condition is not that worse yet, that's at page 44 of the appendix. The first amended complaint alleged only that plaintiff was denied treatment in February of 2015 but did not say anything about the effects of that denial on plaintiff's health and that's district court docket number seven at page 24 and the second and third amended complaints again allege that plaintiff had been denied treatment but also said nothing about the effects of the denial nor anything about plaintiff's symptoms more generally and that's at page 191 and 203 through 205 of the appendix and of course plaintiff has since conceded that he has received that he received the disputed treatment months before filing the operative complaint in this matter. And just to respond to a few points that my adversary made about the papers filed with the original complaint, it was noted that there's nothing in the record regarding how why the decision was made to deny treatment in 2015 or how he was being monitored but the progress note from February 19, 2015 at page 23 of ECF number three does indicate that he received a test indicating a F0 level of fibrosis and that accordingly he did not meet treatment guidelines but he would continue to be monitored. And so essentially here regardless of the complaint that is considered there's an insufficient allegation. If the court is inclined to resolve the question of which complaint did matter here for the purpose of the imminent danger analysis it should hold that the third amended complaint was the operative one. That complaint was the only one that was ever served on any defendant or the only one that ever had the capacity to redress any imminent danger and holding that the allegations in an amended complaint should be evaluated for imminent danger also comport with this court's holding in Chavez where the court held that the district court abuses discretion by not reviewing a proposed amended complaint for allegations of imminent danger and reviewing an amended complaint is also fair to both parties. It prevents manipulation by a three strikes inmate who could easily plead a claim asserting an alleged imminent danger and then drop that claim in an amended complaint without consequence but such a rule would also redound to the benefit of an inmate who seeks to add more detailed factual allegations of imminent danger in an amended complaint whereas the initial complaint was sufficient. And I'd like to also respond to the point about that Mr. Romberg made about the argument that an initial ISP determination shouldn't be conflated with full-scale merits review. I think that argument is something of a red herring. We do not argue the district court should conduct merits reviews in the course of initial ISP screening. The district court here never engaged in nor did we ask the district court to engage in any sort of merits review in connection with this decision to revoke ISP status. Rather the claim giving rise to an imminent and alleged imminent danger has already been dismissed on the merits. So plaintiff's reliance on the threshold nature of the ISP determination says nothing about whether it is proper for a district court to revisit such a provisional determination and the Shepard case that this court decided last year says that it is indeed proper for a district court to do so. And briefly with respect to the retaliation claim, the assertion was made that simply because the district court permitted the retaliation claim to proceed to service that necessarily means that the alleged imminent danger subsumed within the retaliation claim was found to be conclusory or ridiculous. But an allegation of retaliation can state a valid claim for relief even if they do not allege any defendant's threat to injure the plaintiff. So the fact that the retaliation claim survived screening says nothing about whether it necessarily entails an imminent danger of serious physical injury. And finally just a minor point of clarification with regard to your Honor's questions about 12B6 motion practice. There was a 12B6 motion filed by the three defendants upon whom service was made. It was a motion to dismiss the complaint for failure to state a claim or in the alternative to revoke ISP status. So it's accurate that the court essentially so the district court then took that opportunity to revoke ISP status and did not rule on the merits of the 12B6 argument. But there was, for what it's worth, just to correct the record, there was a 12B6 motion filed. So with that I will happily answer any questions the court may have. Judge Parker? Yes, ma'am. I just have one couple of questions. You forced the allegations and the complaints concerning his medical condition. But, you know, these were pro se pleadings. They're not, they weren't prepared by, you know, Sullivan, Cromwell or Cravath. And aren't we obligated to give them the most liberal reading we can? Yes, of course, Your Honor. But even under a liberal reading I think this court is constrained to, you know, just to take the complaint at its word in a certain extent. I mean, I think the allegations at page 44 are quite instructive here where plaintiff essentially admits that his condition is not that bad yet, but he simply is asking for, he sort of expresses it in terms of he's requesting a treatment that he thinks has a higher success rate. Hepatitis C is not a walk in the park. Surely not. But by the same token, it's also a very low developing disease with a timeline of 20 to 30 years. And the progress notes that we have from 2015 indicate that it is. Wouldn't anyone who knew they had hepatitis and who was sane go promptly and try to get treatment for it? Yes, and I think that's reasonable. And, of course, that is what happened here. But docs monitored him very closely. They didn't ignore his request for treatment. The documents in the record show that his request was taken seriously and that he was monitored and his conditions were evaluated against doc's guidelines and that he, based on his current status of liver function, was found not to warrant more intrusive treatment. And other circuits, I believe the 6th and the 11th circuits have held that where there's evidence submitted with a complaint that, or evidence in the record showing that a plaintiff's treatment has been monitored, that negates the finding of him in danger. And I think that makes sense because if someone is being actively monitored for the progression of their disease, it stands to reason that the proper intervention will occur when it is medically indicated. And the evidence here suggests that it was not medically indicated and doc was simply have a judicial officer take a look at whether he was, in fact, getting appropriate treatment for hepatitis. I'm sorry, is the question whether the judge should have? Well, you're saying this man is coming and claiming that he has hepatitis and, you know, in the prison context, this is not an insignificant problem. He's alleged that he's got an a pro se complaint that he has hepatitis and basically his contention is he doesn't believe he's getting adequately treated for it. Why doesn't that, under the liberal standard that one minute? Well, I think that the court's president makes clear that it's not the fact of a, the fact of a diagnosis that demonstrates harm or an infant danger of harm. It's, it's factual allegations that show that there is an actual effect on a plaintiff's condition. And your position is that that he should be patient and wait and see whether the treatment is adequate or see whether his hepatitis progresses before he is within the ambit of an eighth amendment claim. Well, I just. An imminent danger claim, put it that way. I think that in the context of the papers, we have two things. One is that in the context of the papers we have here in connection with the original complaint, plaintiff himself says that his condition simply isn't that bad yet. And I think, you know, the court is entitled to take that as it's at its word, especially when it's backed up by medical records. And second, I think that especially in light of the admission here that plaintiff did receive the treatment in question in 2017 before filing the operative complaint, I think it's important to take note of the fact that the only complaint that there is, you know, there is a next requirement, which means that there has to be a capacity for litigation in question to redress an impending harm. So I think it's quite relevant here that the only complaint that was ever served on any defendant and therefore ever had the capacity to remedy the impending harm was one that did not contain a claim. Does the fact that he was treated in 2017 for hepatitis have any bearing on his earlier imminent danger issue? I think it suggests that... Suggests he had hepatitis, right? Sure, and that's not in dispute. Pardon me? No, I mean, we certainly do not dispute that he had a diagnosis of hepatitis. So if he had hepatitis at any stage that was not being treated, if he had hepatitis in 2012-2015 that wasn't being treated adequately, is that indicative of imminent danger? I think that if there were allegations that treatment was required and it was having effects on his health, then yes, absolutely. But here what we have is documents showing that medical treatment was not indicated, and there's a number of circuit decisions that specifically concern hepatitis C that specifically know that it's a very long-progressing disease, and the fact that the treatment is really not required in all cases, and in many cases, it's not required. So it's not enough to simply say, I have hepatitis, I need treatment, particularly when the documents show that he was being actively monitored and tests were taken to monitor the extent if any of his liver function and so on. And so the fact that we have them suggests that there was no imminent danger as of the original complaint, and furthermore, the plaintiff says he received the treatment that he desired in January of 2017, and so by the time the third amended complaint was served, the imminent danger seems to have disappeared as a factual matter. And to the extent that the complaint other than the third amended complaint is relevant here, it's certainly not the second amended complaint as Ms. Jones seems to suggest. There's really no principled basis to peg an imminent danger determination to a complaint that neither initiated the lawsuit nor was served on any defendant. So I think if the court is to look at the original complaint, I think that the allegations just simply do not rise to the level of imminent danger under the precedent that we have, and if the court looks to the third amended complaint, which is the one that was served on defendants, and might I add the medical defendants had already been dismissed from litigation, so they weren't in the case anymore. Third amended complaint, factually, the danger wasn't there and the nexus wasn't there either. Thank you. Judge Rodney, any questions? Yes, just very quickly. At what point in the sequence of complaint filings was he approved for treatment? It was approximately nine months. Based on the allegations that we have, it was approximately nine months before the third amended complaint was filed. So January 2017, and he filed the third amended complaint in October of that year. What does it mean to be The point I want to get to is, at that point, is that enough to infer that he needs more than monitoring? I think that if I'm not sure how to answer that question. I do think that if you're not sure, it would be that at that point, it's been determined that he needs more than monitoring, unless you want to point me to something that says no, that would not be appropriate. Well, I think that the I would frame the answer this way, which is to say that the impending harm that was the impetus for this litigation was an alleged denial of treatment. And or sort of harms arising from failure to get that treatment. And now that point, as I said, he received that treatment. But not until later. Sure, but before filing the operative complaint that was served on the defendant. So I'm sorry, I may have missed something. I thought he didn't receive treatment until the fourth amended complaint. No, there were only ever three. There was four total, the original first amended, second amended, third amended. And he states that he received treatment nine or 10 months before filing the third amended complaint, which was the last complaint file that was served on. So So how much time between when he was approved for treatment and when he when he finally got it? And when he received the treatment? Yes. That that's not in the record, Your Honor. And I don't know that as a factual because my concern here is whether he's got a claim that once approved for treatment, the failure to get it to him within to provide it for him for a reasonable time. Placed him in imminent danger. And if you want to take a moment to tell me why that's not an appropriate way to look at it, I'm happy to listen. Sure. Well, the allegation that we have, I mean, that there could be but that's not the fact that has been alleged in the in the operative complaint, which which post dates the receipt of treatment plaintiff continues to refer to an alleged denial of treatment in 2015. And he he doesn't refer to the fact that he received treatment, the treatment that an issue two years later, and and again, in the operative complaint, he he makes the allegation that he doesn't say anything about the effects of the denial on his own health status. And I think that's a very important omission in light of the very, very long acting the slow progression of the disease, and especially in light of the fact that the clinical evidence in the record shows that he did not have any liver malfunctions as of February 2015. So the the the allegations of a third amendment complaint are quite salient in what they omit to allege, I would say. Thank you catch the promise. Miss Rosenbluth, I have a unrelated, well, let me back up. January 2015, this will require me to retrace a step of Judge Parker of questions posed by Judge Parker and Judge Riley. What is it that happened on January 2015? The request for treatment? So I think there's there's, I think the relevant date is January 2017, which is when Mr. McFadden states that he received treatment. And that would be about nine months before he filed the operative complaint, the third amended complaint in October of 2017. October 2017 is the operative complaint, which is the third amended? Correct. And what was it that occurred on October 2015, in response to, I think it was Judge Parker's question? Filed then, right? No, I'm not sure there's any significance to the October 2015 date. November 2015 is when the original complaint was filed. The first amendment complaint was filed in December of 2015. The second amendment complaint was filed in October of 2016. And the third amendment complaint was filed in October of 2017. All right, let me ask you to turn your attention very briefly to the matter of interference with mail, which is quite far removed from this particular line of questioning about the hepatitis. I'm a little, since you're not going to have another opportunity to speak, and I mean to inquire plaintiff's counsel on this question. Do you have anything to add on interference with mail? It struck me as I read the plaintiff's position, maybe I'm watching too many movies about incarcerated persons, but I had always assumed that mail and phone calls were monitored on an ongoing basis. But Fadden is contending that the defendants, your clients, on at least 20 occasions interfered with his mail in violation of the first amendment. Could you address that claim? Yes, Your Honor. The main thing I have to say about that claim is that if there's any doubt as to the propriety of dismissal as to that claim, the remedy here would be to remand to the district court. None of the parties that are alleged to have any involvement in the interference with mail are currently parties to this appeal. And so we have not taken a position as to the that claim on interference with mail is simply not before us. That's right. I see. Okay. Well, I'll ask Ms. Jones or Mr. Romberg to respond to that question, and we'll turn first to Ms. Jones on whatever matter she wants to spend her minute of rebuttal. Thank you, Your Honor. Unless the court has any specific questions for me, I will leave the legal mail question to Mr. Romberg and waive my rebuttal. Okay. Judge Koubranos, may I ask a question? Yes, of course. Okay. Counsel, I just want to ask whether I've understood correctly that the treatment notes that are attached to your client's filings show that between 2009 and 2014, his viral load decreased by approximately 50 percent, and then it rebounded in 2015. Am I correct in understanding that's the progression of the disease? Your Honor, it started to rebound in 2013, moving forward, so just a little bit. So, in 2013, it was at approximately 2.4, and in 2014, it was up to 3.5, and then 6.9, and as Your Honor noted earlier, he alleged over 10 million at the end of 2015. Okay. And during that period, 2009 to 2014, when it remained under 3.5 percent, is it your position that he was in imminent danger from not getting more than monitoring during that period? Yes, Your Honor. What's the fact pleaded that would admit that as a reasonable inference? Your Honor, the fact he pled not only his specific viral load, but in 2004, when he was approved for treatment, the viral load was only over 1 million. In 2004, when he was approved, it was only over 1 million. So, as it continued to increase, it suggests that his condition was worsening, but that he should have had the treatment that he wanted. He also specifically alleged liver dysfunction, specifically alleged constant pain and constant suffering, and I would just briefly direct the court to Doc's own guidelines, which say that 75 to 80 percent of patients will not feel ill, of hepatitis C patients will not feel ill, but all the while, their liver is degenerating, and the disease is getting worse, and that's exactly what happened here. Time went on, and then McFadden started having symptoms, and he alleged them, and he was still denied his treatment. All right, thank you. Thank you, Your Honor. Judge Parker, any questions for Ms. Jones? No, no more. Thank you. All right, Mr. Rombo, you want to take advantage of a minute? Very briefly, just to, I think we've been over the timeline a few times, but just to clarify that, absolutely, there was a period between approval of treatment in 2004, because apparently his viral load was over a million, and then it fluctuated a bit, but by 2013 began to increase rapidly, and by the time he filed his complaint in November of 2015, his original complaint, we would argue there's imminent danger, but he doesn't have to depend on that. We primarily point to imminent danger by the time of the second amended complaint, when his viral load was over 10 million, and that's October of 2016. The doc's only statement that we will monitor him, and he doesn't currently qualify for treatment, is in February of 2015, so 18 months earlier, so October 2016 is the time of the second amended complaint. He says it's getting worse and worse and worse. It's life-threatening. My liver is degenerating. I'm in constant pain and suffering, and then after October 2016, he receives treatment three months later in January of 2017, so as to Judge Raji's question about when he was approved, we don't know, but in any event, the fact that he received treatment with three months provides compelling reason to believe that he was in imminent danger three months earlier in October of 2016, and we think he's easily met his burden, even in November of 2015, when all he needs to do is show notice pleading and all favorable inferences in his favor, given his increasing viral load and symptoms that he was suffering. As to the political mail claim, absolutely defendants here, they don't contest the viability of those three claims, political mail, the hearing aid ADA claim that the district court didn't even address, and the conditions of confinement claim that the district court said there's no risk of harm, which isn't necessary, and in any event is self-evident. We think those are far more than colorable claims, and the district court ignored, and as defendants concede, that McFadden specifically alleged that two of his claims were dismissed because of the interference with his legal mail, which is plainly sufficient too. Is that interference with mail claim before us now? Yes, absolutely. The defendants argue that there's no personal jurisdiction over the defendants because the defendants as to those claims haven't been served, and it's true those defendants haven't been served, but this court has repeatedly, and we cite these cases in the reply brief, when there's a sua sponte dismissal prior to service on defendants, what this court does is it assesses the validity of that sua sponte dismissal, and often when there's a dismissal against defendants prior to service, they file an amicus brief in the second circuit to state their position to protect their interests, but they didn't choose to do so here. Obviously, that doesn't preclude them from moving to dismiss on the pleadings under 12b6 or filing for summary judgment, but it is absolutely before this court to determine the viability of the propriety of sua sponte dismissal prior to service. What this court has said is a draconian device, strongly disfavored, only proper if there's no colorable basis, and this court regularly reviews those sua sponte dismissals. Okay. Judge Parker, any questions for Mr. Umberg? No more. Thank you. Judge Raji? No, thank you. Okay, thank you. We'll take the matter under submission with gratitude to all counsel for their arguments. Thank you.